Cecilia D. Wang (SBN 187782)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0770
*cwang@aclu.org*

David A. Donatti*
ACLU OF TEXAS
P.O. Box 8306
Houston, TX 77288
Tel: (713) 942-8146
*ddonatti@aclutx.org*

Gloria D. Smith (SBN 200824)**
SIERRA CLUB ENVIRONMENTAL
LAW PROGRAM
2102 Webster Street, Suite 1300
Oakland, CA 94612
Tel: (415) 977-5532
*gloria.smith@sierraclub.org*

*Admitted Pro Hac Vice
**Attorney for Plaintiff Sierra Club only

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SIERRA CLUB, *et al.*,<br>Plaintiffs,<br>*v.*<br>DONALD J. TRUMP, *et al.*,<br>Defendants. | No. 19-cv-892-HSG<br>No. 20-cv-1494-HSG<br>No. 19-cv-00872-HSG<br>No. 20-cv-01563-HSG |
| STATE OF CALIFORNIA, *et al.*,<br>Plaintiffs,<br>*v.*<br>JOSEPH R. BIDEN, *et al.*,<br>Defendants. | **PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND FOR EMERGENCY RELIEF, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

1    Defendants are currently in breach of the Settlement Agreement in this case, assertedly

2  because they were constrained from fulfilling certain of their obligations by an injunction issued in

3  litigation in the U.S. District Court for the Southern District of Texas limiting the uses of Fiscal Year

4  2020-21 barrier system appropriations.  Plaintiffs Sierra Club and Southern Border Communities

5  Coalition ("Plaintiffs" here, and "*Sierra Club* Intervenors" in the Texas action) have diligently

6  pursued relief in the Texas litigation; they have won their Fifth Circuit appeal from an order by the

7  Texas district court denying their motion to intervene; and Plaintiffs' motion to modify or vacate the

8  injunction is now pending in the Texas district court.  Plaintiffs also are in ongoing negotiations with

9  Defendants about potential alternative funding sources and modifications to the Settlement

10 Agreement.  But because the remaining FY 2020-21 funds expire on September 30, 2025, and the

11 government has stated its intention to spend down the funds before that date, Plaintiffs request

12 urgent but limited relief from this Court to preserve the funding source specified in some provisions

13 of the Settlement Agreement so that Defendants may cure their breach.

14    Specifically, Plaintiffs request: (1) an immediate accounting of the funds that are available to

15 fulfill the Settlement Agreement, (2) an order requiring Defendants to give at least seven business

16 days' notice before undertaking any new obligations that threaten to reduce available funds below

17 $50 million, (3) an order preserving at least $50 million beyond September 30, 2025, to ensure that

18 funds are not spent for other purposes and do not expire while enforcement litigation proceeds,[1] and

19 (4) prompt referral of the matter back to the Magistrate Judge for a mediation on modifications to the

20 Settlement Agreement to avoid reopening the judgment. ECF No. 372-1 ("Settlement Agreement"),

21 ¶ 73.

22

23

24

25

26 [1] The Defendants have not stated the full cost of Settlement Agreement projects that were paused
   due to the injunction. At least $23 million in Phase 3 mitigation projects were frozen, in addition to
27 the cost of all Phase 2 projects, including the installation of large and small wildlife passages,
   described below.

28

1    **I.     BACKGROUND**

2         ***A.     The Settlement Agreement and Texas GLO Litigation***

3         On July 17, 2023, this Court granted Plaintiffs' motion for voluntary dismissal in light of the

4    Settlement Agreement, which it incorporated into its order, and retained jurisdiction "for the purpose

5    of enforcement of the parties' settlement agreement." ECF No. 375.

6         The Settlement Agreement committed the Defendants to undertake significant environmental

7    mitigation and remediation work at project sites throughout the Southwest where they had

8    constructed border walls using diverted DoD funds. Settlement Agreement obligations included a

9    series of "Phase 2" commitments, including the installation of small and large wildlife passages, ¶¶

10   4-7, invasive species management, *id.* ¶ 33, erosion and drainage control, *id.* ¶¶ 40, 42-44,

11   endangered and at-risk species monitoring, *id.* ¶ 53, and additional "Phase 3" projects addressing the

12   environmental and community impacts of barrier system construction, ¶¶ 54-55.

13        The Settlement Agreement stated that "Defendants' responsibility under this agreement is

14   contingent upon the availability of appropriated funds." *Id.* ¶ 57. Defendants specifically represented

15   in the Settlement Agreement "that such funding is currently available and that they will take all

16   reasonable steps to ensure that such funds remain available to comply with this Agreement." *Id.*

17        While many of the Settlement Agreement's terms requiring Defendants to spend money do

18   not specify a funding source, some provisions specify funding "exclusively from DHS's fiscal year

19   2020 or 2021 barrier system appropriations[.]" *See id.* ¶ 16 (study on the impact of barrier lighting

20   within the 284 and 2808 project areas); *id.* ¶ 48; *id.* ¶ 53 (monitoring of endangered or at-risk

21   species). The specified appropriation act allocates $1.375 billion "for the *construction of barrier*

22   *system … that utilizes currently deployed steel bollard designs* **or** *operationally effective adaptations*

23   *of such designs that help mitigate community or environmental impacts* … including adaptations

24   based on consultation with [local jurisdictions]." Fiscal Year 2020 DHS Appropriations Act, P.L.

25   116-93, 133 Stat. 2511 Div. D, § 209(a) (emphasis added).

26        In March 2024, a district court in the Southern District of Texas issued a preliminary

27   injunction in a case brought by a Texas state agency and the states of Missouri and Texas against

28

1    President Biden's Proclamation No. 10142, 68 Fed. Reg. 7225, 7225 (Jan. 20, 2021), relating to his

2    administration's border wall policy, and a related DHS Border Wall Plan. *General Land Office v.*

3    *Biden*, 722 F. Supp. 3d 710 (S.D. Tex. 2024) (hereinafter, "*GLO* injunction"). The plaintiffs in that

4    case had alleged that the Proclamation and Plan reflected a policy not to build border walls and

5    argued that such a policy was contrary to the FY20 and FY21 border barrier appropriations act. The

6    preliminary injunction prohibited "the Government and all its respective officers, agents, servants,

7    employees, attorneys, and other persons who are in active concert or participation with them" from

8    obligating FY20 or FY21 funds "toward mitigation and remediation efforts, repair of existing

9    barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id.* at 745.

10        After the government sought a stay (twice) and clarification of the Texas district court's

11   order, on April 5, 2024, the *GLO* parties indicated for the first time that the federal defendants would

12   not appeal the *GLO* injunction. Shortly thereafter, the parties filed a joint motion for a final judgment

13   and permanent injunction, subject only to a dispute about vacatur.

14        Nine days later, and before the *GLO* court entered judgment, the *Sierra Club* Intervenors

15   moved to intervene in that litigation based on the government's assertion that it could not comply

16   with certain provisions of the Settlement Agreement here because of the *GLO* injunction.  Both the

17   federal defendants and the *GLO* plaintiff states opposed intervention, and the judge uniformly denied

18   it to several intervenors including *Sierra Club* Intervenors. The *Sierra Club* Intervenors appealed.

19        On May 15, 2025, the Fifth Circuit ruled for the *Sierra Club* Intervenors, holding that their

20   intervention motion should have been granted. *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL

21   1410414, at *1 (5th Cir. May 15, 2025). The Fifth Circuit held that the *GLO* injunction could

22   threaten the Settlement Agreement and ruled that the United States failed to adequately protect the

23   *Sierra Club* Intervenors' interests in the availability of FY20 and FY21 funds. *Id.* at *6-7.

24        Since the Fifth Circuit's decision and remand to the district court on July 7, 2025, the *Sierra*

25   *Club* Intervenors, now parties to the *GLO* litigation, have moved to vacate, modify, or clarify the

26   *GLO* injunction to remove any asserted impediment to the Defendants' performance under the

27

28

1  Settlement Agreement. The *GLO* plaintiffs are opposed to such relief, while Defendants do not

2  oppose vacatur. That motion has been pending before the Texas district court since July 25, 2025.

### B.    Notice of Breach and Meet and Confer

4        Shortly after Defendants notified Plaintiffs they would pause work on the Settlement

5  Agreement in light of the *GLO* injunction, Plaintiffs sent a formal notice of breach.  Since then, the

6  parties have met and conferred on multiple occasions while Plaintiffs sought relief in the Southern

7  District of Texas and the Fifth Circuit, as set forth below.

8        On March 14, 2024, counsel for the Defendants informed Plaintiffs that, because of the *GLO*

9  injunction, Defendants had stopped work on several Settlement Agreement projects. After meeting

10 with Defendants and discussing how to keep the Settlement Agreement on track, Plaintiffs sent a

11 notice of breach on April 3, 2024. *See* Notice of Breach, Donatti Decl. Exhibit A.

12       On May 17, 2024, Defendants sent Plaintiffs a letter memorializing the scope of work it

13 asserted to be barred by the *GLO* injunction, including the construction of wildlife passages,

14 erosion/drainage measures, culvert work, and invasive-species removal. Defendants stated in the

15 letter that CBP had paused or modified related contracts. Letter from Andrew Warden, Dep't of

16 Justice, to Cecilia Wang et al., May 17, 2024, Donatti Decl. Exhibit B.

17       Throughout 2024, Plaintiffs repeatedly pressed the Defendants for updates in writing and in

18 virtual meetings, asked about alternative funding sources, and offered proposed solutions to the

19 disruptions caused by the *GLO* injunction, including "swaps" of other mitigation measures for the

20 provisions of the Settlement Agreement that Defendants asserted they were unable to perform.  For

21 example, on August 22, 2024, Plaintiffs wrote to Defendants asking them to identify alternative

22 funding and outlining priorities for a reduced scope of work. Letter from Cecilia Wang, Counsel for

23 SCM, to Andrew Warden, Aug. 22, 2024, Donatti Decl. Exhibit C.

24       In October and November 2024, Defendants provided charts and GPS-identified project lists

25 for nineteen possible "new [border wall] construction" segments using FY 20 and 21 barrier system

26 funds. Defendants stated that these plans were consistent with construction limitations in the

27

28

Settlement Agreement and that construction would begin "no earlier than September 2025." Email from Andrew Warden to Cecilia Wang, et al., Nov. 11, 2025, Donatti Decl. Exhibit D.

In December 2024, Plaintiffs proposed additional solutions to the breach assertedly precipitated by the *GLO* injunction, including opening existing stormwater gates (which would require no expenditure of funds) in exchange for constructing certain large wildlife passages. Email from Cecilia Wang to Andrew Warden, Jan. 17, 2025, Donatti Decl. Exhibit E.

In June 2025, Plaintiffs supplemented their notice of breach. Letter from David Donatti, Counsel for Plaintiffs, to Andrew Warden, June 9, 2025, Donatti Decl. Exhibit F. Plaintiffs requested information, including an accounting of remaining barrier system funds, and offered again to work toward alternative mitigation ideas and funding solutions absent additional congressional appropriations. Further, Plaintiffs identified an independent breach of the Settlement Agreement— new border wall construction in areas prohibited under the Settlement Agreement.

Defendants responded on June 13, 2025. They stated that $566 million in FY 21 barrier system funds remained unobligated. They declined Plaintiffs' request that they "establish[] an escrow or other account that is insulated from further injunction-related restrictions." Letter from Andrew Warden to David Donatti, June 13, 2025, Donatti Decl. Exhibit G. Defendants emphasized that "DHS/CBP has not received an appropriation for barrier construction or the necessary expenses thereof since FY21," and stated:

> all DHS/CBP's prior year barrier system funds have been obligated, expended, or have lapsed. Beyond the approximately $566M in unobligated FY21 barrier system funds, there is no other funding that is legally available for the Phase 2 remediation and Phase 3 mitigation projects and activities that are outlined in the Settlement.

*Id.*

The parties met and conferred on August 25, 2025, to discuss the potential expiration and obligation of FY21 funds and Plaintiffs' intention to return to this Court for enforcement proceedings. Plaintiffs shared a mitigation plan indicating that FY21 funds could be used to mitigate the community and environmental impacts of ongoing and planned construction. Mitigation Plan,

Donatti Decl. Exhibit H. While Defendants have indicated they will consider Plaintiffs' proposals, they have made no commitments to undertake any of Plaintiffs' proposals.  Defendants have not changed their position that they will not escrow or reserve any FY21 funds for performance of their obligations under the Settlement Agreement.

### C.    Defendants Plan to Exhaust Remaining FY21 Funds Imminently

Several circumstances have changed that make it imperative for the Court to grant Plaintiffs' requested relief to preserve the availability of FY21 funds as a specified source of funding for Defendants' obligations under the Settlement Agreement. Without judicial intervention, the remaining FY21 border barrier funds will lapse on September 30, 2025. And, moreover, Defendants have expressed their intention to spend down those funds on purposes other than performance of their Settlement Agreement obligations.  Although Plaintiffs are now parties in the *GLO* litigation pursuant to the Fifth Circuit's order, their sole objective in that court is to undo or modify the injunction and remove the obstacle it has imposed on Defendants' performance. This Court retains jurisdiction to enforce the Settlement Agreement.

Preserving Defendants' ability to use FY21 funds to fulfill their contractual obligations under the Settlement Agreement has become even more important in the past two weeks, as CBP's Infrastructure Portfolio Director Paul Enriquez testified on August 15, 2025, that DHS has obligated or will obligate the remaining FY21 funds to purposes other than those agreed to in the Settlement Agreement. Ninth Enriquez Declaration, Donatti Decl. Ex. H. Only $203 million remains unobligated, and "CBP has a contracting and execution plan" which may reduce the amount to as little as $6 million.[2]

---

[2] On July 4, 2025, Congress allocated $46,550,000,000 for a "border infrastructure and wall system," including "[c]onstruction, installation, or improvement of new or replacement primary, waterborne, and secondary barriers," roads, system attributes including cameras, lights, "and other detection technology," and "[a]ny work necessary to prepare the ground at or near the border to allow U.S. Customs and Border Protection to conduct its operations, including the construction and maintenance of the barrier system." 139 Stat. 358, sec. 90001, *available at* https://www.congress.gov/bill/119th-congress/house-bill/1/text. This is the first allocation for barrier systems since the FY20 and FY21 funds. Plaintiffs asked Defendants if these funds would be

1    **II.    ARGUMENT**

2        Plaintiffs respectfully request targeted, near-term relief to ensure that bargained-for

3    mitigation provisions in the Settlement Agreement will not be nullified by Defendants' breach even

4    if Plaintiffs prevail here and in the *GLO* litigation. Specifically, this Court should order Defendants

5    to provide an accounting of the funds that are available to perform under the Settlement Agreement.

6    The Court should also require notice before available funds are obligated or allocated below $50

7    million and exercise its equitable authority to preserve at least $50 million of FY21 funds for

8    Settlement Agreement commitments beyond the statutory lapse date of September 30, 2025. Free

9    from the time pressure created by the scheduled expiration of FY21 funds, Plaintiffs further request

10   that this Court refer the matter back to Magistrate Judge Ryu for further settlement negotiations.

11   These measures will serve the interests of justice guaranteed by the Settlement Agreement, mitigate

12   the urgency caused by the United States' litigation and spending decisions and the expiration of the

13   FY21 funds, and respect comity with a sister federal court.

14       **A.    *The Court Has Jurisdiction to Preserve Funds to Ensure that Defendants Can***

15            ***Ultimately Comply with the Settlement Agreement.***

16       Federal courts may enforce settlement agreements where, as here, the dismissal order retains

17   jurisdiction and incorporates the agreement. ECF No. 375; *see also, e.g.*, *Kokkonen v. Guardian Life*

18   *Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). This Court retains jurisdiction to enforce the

19   Settlement Agreement for at least four years from its execution in July 2023. ECF. No. 375. Such

20   jurisdiction can be extended "if settlement obligations are not completed within those four years." *Id.*

21       The Settlement Agreement permits either party to seek relief from the dismissal of the

22   lawsuits pursuant to Federal Rule of Civil Procedure 60(b)(6). Settlement Agreement ¶ 73.

23   According to the Settlement Agreement, the prerequisites for such a motion are timely notices of

24   breach and efforts to meet and confer. *Id.* The Plaintiffs have submitted timely notices of breach and

25   have met and conferred with the United States on multiple occasions to try to narrow the issues.

26   available for Settlement Agreement projects, and Defendants stated they have not made a
     determination.

27

28

1    Although the FY21 funds will expire on September 30, 2025, this Court has the equitable

2 power to "simply suspend the operation of a lapse provision and extend the term of already existing

3 budget authority." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir.

4 1994) (quoting *Nat'l Ass'n of Reg'l Councils v. Costle,* 564 F.2d 583, 588 (D.C. Cir. 1977)); *Wilson*

5 *v. Watt*, 703 F.2d 395, 403 (9th Cir. 1983) (reversing denial of injunction and ordering district court

6 to "order that such funds be held available as is necessary to implement its order"); *see also* 31

7 U.S.C. § 1502(b) ("A provision of law requiring that the balance of an appropriation or fund be

8 returned to the general fund of the Treasury at the end of a definite period does not affect the status

9 of lawsuits or rights of action involving the right to an amount payable from the balance.").

10    While the Court may preserve funds against expiration, it cannot do so if the relevant funds

11 are obligated. Thus, Plaintiffs seek this Court's limited intervention to ensure that funds are available

12 for Defendants to cure their breach and comply with the Settlement Agreement while the parties

13 litigate Plaintiffs' claim of breach and the parties negotiate potential resolutions.

14    **B.  *The United States Has Breached the Settlement Agreement***

15    The United States has stopped work on several obligations. Letter from Andrew Warden,

16 May 17, 2024, Donatti Decl. Exhibit B; Letter from Andrew Warden, June 13, 2025, Donatti Decl.

17 Exhibit G ("[N]one of the Phase 3 mitigation projects shown on the May 3, 2024, chart have been

18 restarted or rescoped.").

19    The United States argues that its work stoppage is not a breach of the Settlement Agreement

20 because its commitments are "subject to the availability of funds." The argument fails for three

21 reasons.

22    First, the United States has not shown that funding is unavailable. While some Settlement

23 Agreement provisions name the FY20 and FY21 barrier system funds as their exclusive funding

24 source, several others, including the installation of large and small wildlife passages, do not specify a

25 funding source. *See, e.g.*, Settlement Agreement ¶¶ 4-7. Indeed, the Settlement Agreement's

26 standalone section on "Availability of Appropriations" does not refer to FY20 or FY21 funds and

27 contemplates, without guaranteeing, that Congress may later "appropriate funds sufficient to meet

28

any deficiencies." *Id.* ¶ 57. Further, the Settlement Agreement identifies funding deficiencies as a potential basis for a breach of the Settlement Agreement and reinstating proceedings. *Id.* ¶ 58. Even if the Defendants maintain that the FY21 funds are unavailable (and Plaintiffs disagree), they must at minimum show that *no* funds are available.

Second, the United States represented in the Settlement Agreement not only that funding was available, but that they "w[ould] take all reasonable steps to ensure that such funds remain available to comply with this Agreement." *Id.* ¶ 57. Defendants indisputably did not adequately represent the Plaintiffs' interests in protecting the availability of funding in the *GLO* litigation. *See Gen. Land Off.*, 2025 WL 1410414, at *3 n.2 ("No party argues that the would-be intervenors currently fail to meet 24(a)(2)'s fourth requirement—inadequate representation by the current parties."). The government's decision not to appeal the categorical, nationwide *GLO* injunction, along with its opposition to Plaintiffs' intervention in the *GLO* case, has delayed compliance by over one-and-a-half years. Throughout this time, the United States has not identified alternative funding sources or accepted reasonable exchanges or modifications. Even if accepting the injunction was "reasonable," and it was not, the United States has consistently declined to propose or accept solutions to address the impact caused by the *GLO* injunction.

Third, either those provisions that do explicitly name the FY20 and FY21 funds can be modified, or this Court can apply traditional tools of contract interpretation and hold that those funds *are* available for Settlement Agreement projects. *See Flores v. Sessions*, 394 F. Supp. 3d 1041, 1048 (C.D. Cal. 2017) ("The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract.") (quoting *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704, 709 (9th Cir. 1989)). The FY21 appropriation expressly authorizes consultation and design adaptations to barrier system construction "that help mitigate community or environmental impacts." CAA 2020, Div. D, § 209(a)(1); CAA 2021, Div. F, § 210(a)(1). The mitigation contemplated by the Settlement Agreement, like design adaptations, wildlife passages, erosion/drainage control, culvert realignments, and invasive-species removal, fits the funds' authorization of barrier system construction using "operationally effective adaptations . . . that help mitigate community or

environmental impacts." Especially where, as here, the United States is using FY21 funds to build new border walls in the same sectors targeted by 2808 and 284 construction, the government may incorporate design elements in those new sections that serve to mitigate the harms addressed by the Settlement Agreement—for example, subtly increasing the spacing between bollards, incorporating large and small wildlife passages similar to those specified in the Settlement Agreement but never installed as promised, or modifying the position of crossbars to permit wildlife, but not human, migration.

Finally, as documented more recently, the Defendants' breach is not limited to the impairment caused by the *GLO* injunction. *See, e.g.*, Letter from David Donatti to Andrew Warden, June 10, 2025, Donatti Decl. Ex. F, at 3 (describing construction in areas prohibited under the settlement and the closure of stormwater gates). The United States admits that it has "constructed approximately 950 feet of new bollard barrier" in a location prohibited by the Settlement Agreement. Letter from Andrew Warden to David Donatti, June 13, 2025, Donatti Decl. Exhibit G. While Defendants maintain that their "mistake" was mutual, *id.* at 4, their prior communication about these projects stated that they *would not* build in prohibited areas, and that they would not build before September 2025. *See* Email from Andrew Warden to Cecillia Wang, et al., Nov. 11, 2024, Donatti Decl. Exhibit G.  Neither representation has turned out to be true.

Enforcing the Settlement with narrow, time-limited measures, including an accounting and a preservation floor through and beyond September 30, 2025, would ensure that performance remains feasible without dictating project-by-project outcomes.

## C.  *This Court Should Grant Emergency, Time-Limited Relief*

Plaintiffs request four tailored measures to preserve the Settlement Agreement against the imminent expiration of the FY21 funds. First, this Court should order an immediate accounting of all funds that are available to fulfill the Settlement Agreement. Second, this Court should order a preservation floor of $50 million by requiring notice and leave of Court before the United States depletes remaining FY21 funds for non-settlement projects. Third, this Court should order the

1  preservation of $50 million to ensure that funds are available for the Settlement Agreement if

2  Plaintiffs prevail.

3      The relief requested is modest. The $50 million required for performance would fund

4  approximately $23 million in frozen Phase 3 mitigation projects, Settlement Agreement ¶ 48, and

5  provide some financing for several stalled Phase 2 projects, including installation of additional small

6  and large wildlife passages, *id.* ¶¶ 4-7, environmental impact studies of new border barrier lighting,

7  ¶¶ 15-16, invasive species management, promised erosion and drainage control measures, ¶¶ 40, 42-

8  44, the remediation of the Arizona Trail Head, ¶ 47, and monitoring of endangered and at-risk

9  species, ¶ 53.  Plaintiffs are not asking the Court to dictate how these funds will be spent. Instead,

10  they ask that the Court order an accounting, a preservation floor, and the creation of a dispute-

11  resolution process, so that finite FY21 dollars are not lost while the parties and this Court consider

12  appropriate relief.

13      Urgent relief is required to prevent irreparable harm. The FY21 funds, which are the only

14  funds the United States has so far considered to be available to fund the Settlement Agreement,

15  expire on September 30, 2025, if they are not obligated beforehand. Once they are obligated, and

16  without judicial preservation against their imminent expiration, mitigation cannot be funded from

17  this source. An urgent accounting, preservation floor, and creation of a process for negotiation would

18  help to prevent irreparable harm. These limited measures are also equitable and in the public interest.

19  Enforcing settlements, honoring Congress's mitigation directive in its FY21 appropriation act, and

20  preventing waste of appropriated funds serve the public interest; so, too, do simple mitigation

21  measures intended to preserve treasured public lands and at-risk wildlife against unnecessary harm.

22  **III.    CONCLUSION**

23      Plaintiffs did not rush to court. They first pursued remedies under the Settlement Agreement

24  through a meet-and-confer process—notice, consultation, and offered proposals—while seeking

25  relief to protect the availability of funds in the *GLO* litigation. The *GLO* court is now considering

26  vacatur or modification of its injunction. Recent developments suggest several pathways to relief,

27  but these solutions require time, and time is running out on the FY21 funds. Plaintiffs need modest,

28

1   practical relief now so that the parties can perform under the Settlement Agreement before and

2   beyond September 30, 2025.

3          Plaintiffs therefore respectfully ask the Court to:

4          1.   ORDER Defendants to file an accounting of unobligated FY 2021 barrier system

5   balances and a list of Settlement-related mitigation items with estimated obligation amounts on or

6   before September 12, 2025.

7          2.   PROHIBIT Defendants from obligating or otherwise making unavailable more than $50

8   million of FY 2021 barrier system funds without 7 business days' notice and leave of this Court.

9          3.   PRESERVE at least $50 million of FY 2021 § 210(a)(1) funds beyond September 30,

10  2025, to ensure this Court's ability to provide relief.

11         4.   REFER the case to Magistrate Judge Donna M. Ryu for settlement negotiations.

12

13   Dated:  September 4, 2025                    Respectfully submitted,

14                                               By:___/s /*David A. Donatti*_____
                                                 David A. Donatti*
15                                               ACLU OF TEXAS
                                                 P.O. Box 8306
16                                               Houston, TX 77288
                                                 Tel: (713) 942-8146
17                                               *ddonatti@aclutx.org*

18
                                                 Cecillia D. Wang (SBN 187782)
19                                               AMERICAN CIVIL LIBERTIES UNION
                                                 FOUNDATION
20                                               39 Drumm Street
                                                 San Francisco, CA 94111
21                                               Tel: (415) 343-0770
                                                 *cwang@aclu.org*
22

23                                               Gloria D. Smith**
24                                               SIERRA CLUB ENVIRONMENTAL
                                                 LAW PROGRAM
25                                               2102 Webster Street, Suite 1300
                                                 Oakland, CA 94612
26                                               Tel: (415) 977-5532
                                                 *gloria.smith@sierraclub.org*
27

28

*Counsel for Plaintiffs*

*Admitted Pro Hac Vice
**Attorney for Plaintiff Sierra Club only

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2025, I electronically filed a copy of the foregoing document. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

_/s/David A. Donatti_
David A. Donatti

PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT
CASE NOS. 19-CV-00892-HSG; 20-CV-01494-HSG; 4:19-CV-00872-HSG; NO.4:20-CV-01563-HSG