UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-00892-HSG<br><br>**ORDER DENYING MOTION FOR EMERGENCY RELIEF**<br><br>Re: Dkt. No. 376 |
| SIERRA CLUB, et al.,<br><br>　　　　　*Plaintiffs,*<br><br>　*v.*<br><br>DONALD J. TRUMP, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-01494-HSG<br><br>Re: Dkt. No. 99 |

　　　　Plaintiffs Sierra Club and Southern Border Community Coalition have filed a motion to enforce the parties' settlement and for emergency relief in these related cases.[1]  In short, Plaintiffs Sierra Club and Southern Border Community Coalition contend that Defendants have breached the settlement agreement that the parties entered into in July 2023.  *See Sierra Club v. Trump*, Case No. 19-cv-00892-HSG, Dkt. No. 372-1 ("Settlement Agreement" or "SA").[2]  As explained in

---

[1] The Court notes that although these motions are only brought by Plaintiffs Sierra Club and Southern Border Community Coalition, they filed the same motion in *State of California v. Trump*, Case No. 19-cv-00872-HSG and Case No. 20-cv-01563-HSG.  The Court assumes these filings were in error.  Sierra Club and Southern Border Community Coalition are not parties in those related cases.  For purposes of this order, therefore, "Plaintiffs" refers to Sierra Club and Southern Border Community Coalition.  The Court also **TERMINATES AS MOOT** Dkt. No. 405 in *State of California v. Trump*, Case No. 19-cv-00872-HSG, and Dkt. No. 179 in *State of California v. Trump*, Case No. 20-cv-01563-HSG.

[2] Unless otherwise indicated, all docket references are for *Sierra Club v. Trump*, Case No. 19-cv-00892-HSG.

1  more detail below, Plaintiffs specifically seek emergency relief to reserve funding while they
2  pursue enforcement litigation. The Court held a hearing on the motion.[3] For the reasons detailed
3  below, the Court **DENIES** the motion.

**I.   BACKGROUND**

   **A.   Settlement**

Beginning in 2019 Plaintiffs filed several lawsuits in the Northern District of California challenging construction of border barriers along the southern border of the United States using funds diverted from what was then known as the Department of Defense ("DoD"). On July 17, 2023, the Court granted Plaintiffs' motion for voluntary dismissal in light of the parties' Settlement Agreement. Dkt. No. 375. As part of the dismissal order, the Court retained jurisdiction "for a period of four years . . . for the purpose of enforcement of the parties' settlement agreement . . . ." *Id.*

The Settlement Agreement recognized that in January 2021, President Biden issued a Proclamation declaring that "[i]t shall be the policy of [his] Administration that no more American taxpayer dollars be diverted to construct a border wall." *See* SA at 2 ("Recitals") (citing Proclamation No. 10142, 86 Fed. Reg. 7225, 7225 (Jan. 27, 2021)).[4] Consistent with this policy, DoD and the Department of Homeland Security ("DHS") created a "Border Wall Plan" regarding the redirection of funds. *See id.* at 3. As relevant to this motion, the Border Wall Plan included using DHS border wall appropriations from Fiscal Years 2018 – 2021 "to fund close-out, remediation, and mitigation work" "subject to the availability of those funds." *See id.* at 4; *see also* Dkt. No. 310 ("Border Wall Plan"). The Border Wall Plan sequenced the remediation work into three phases. *See* SA ("Recitals") at 4–5. And consistent with this plan, the Settlement Agreement identifies specific remediation projects that Defendants agreed to undertake during these phases. *See id.* at ¶¶ 3–55.

The Settlement Agreement explicitly notes that "Defendants' responsibility under this

---

[3] The Court granted Plaintiffs' request to shorten time and set the briefing and hearing schedule that Plaintiffs requested. *See* Dkt. No. 379.
[4] This Proclamation was later revoked by a Proclamation issued by President Trump in January 2025. *See* Proclamation No. 10886, 90 Fed. Reg. 8327, 8328 (Jan. 25, 2025).

1  agreement is contingent upon the availability of appropriated funds." *See id.* at ¶ 57. Plaintiffs,
2  likewise, "retain[ed] the right to reinstate proceedings" "[i]n the event that Defendants [were]
3  unable to comply with their responsibilities due to a lack of appropriated funds." *Id.* at ¶ 58. The
4  parties agree that some, but not all, of the Phase 2 and Phase 3 work has been done. *See* Dkt. No.
5  376 at 10; Dkt. No. 376-1, Ex. B at 9–12; Dkt. No. 382-1 ("Enriquez Decl.") at ¶¶ 8–9.
6  Defendants acknowledge that they have stopped further remediation work under the Settlement
7  Agreement. *See* Dkt. No. 310 at 12.

### B. Texas Litigation and Injunction

Defendants explain that they stopped further remediation work because of an injunction issued in *General Land Office of Texas v. Trump*, Case No. 7:21-cv-272 (S.D. Tex.) ("GLO litigation"), in March 2024. Some brief background is instructive here. In 2021—before the cases in this Court settled—GLO, the State of Missouri, and the State of Texas filed suit in the Southern District of Texas challenging the Biden Administration's border policies, including the use of Fiscal Year 2020 and 2021 border barrier appropriations for anything other than building new border wall. *See GLO*, Dkt. Nos. 1, 34. The GLO plaintiffs sought a preliminary injunction over the Defendants' objections, and the court granted the injunction in part on March 8, 2024. *See Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 745 (S.D. Tex. 2024), *judgment entered sub nom. Gen. Land Off. of Texas v. Biden*, No. 7:21-CV-00272, 2024 WL 2754118 (S.D. Tex. May 29, 2024).

The injunction prohibits the Government from obligating substantial portions of the Fiscal Year 2020 and 2021 border barrier appropriations "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes." *Id.* (interpreting Subsection (a)(1) of the Consolidated Appropriations Acts, which provided funding for "construction of [a] barrier system along the southwest border"). The order further clarifies that Subsection (a)(1) of the relevant appropriations acts "permits only the construction of physical barriers, such as additional walls, fencing, buoys, etc." *Id.* (citing Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 209, 133 Stat. 2317, 2511 (2019) and Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 210, 134 Stat. 1182, 1456–57

(2020)).[5]

In response to the injunction, Defendants explain that they "took various actions to suspend, modify, or terminate, as appropriate, various contracts and interagency agreements that relied on the FY20 and FY21 barrier system funds to pay for projects and activities prohibited by the injunction," including remediation work under the Border Wall Plan and Settlement Agreement. *See* Enriquez Decl. at ¶ 11.

Following the GLO court's preliminary injunction order, Plaintiffs Sierra Club and Southern Border Community Coalition moved to intervene in the GLO litigation. *See GLO*, Dkt. No. 167. Defendants opposed the motion to intervene, arguing that Plaintiffs should pursue relief under the Settlement Agreement in this case as the more appropriate forum. *See id.*, Dkt. No. 184. Plaintiffs did not initially do so. The GLO court ultimately denied the motion to intervene and entered a final judgment and permanent injunction, incorporating the terms of the preliminary injunction, in May 2024. *See id.*, Dkt. Nos. 207, 208.

Plaintiffs appealed the denial of their motion to intervene, and in May 2025, the Fifth Circuit ordered that they be allowed to intervene. *See Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *1 (5th Cir. May 15, 2025). In July 2025, Plaintiffs filed a motion to vacate the injunction in the GLO litigation. *See GLO*, Dkt. No. 256. On September 15, 2025, the GLO court granted the motion to vacate the final judgment and permanent injunction, but denied the motion to dissolve the preliminary injunction. *See id.*, Dkt. No. 274. The prohibition against using the Fiscal Year 2020 and 2021 funds for mitigation and remediation work thus remains in place as of the date of this order.

Once the GLO court entered the injunction, Defendants began identifying new border barrier construction projects that could be funded with the remaining Fiscal Year 2020 and 2021 funds, consistent with the injunction. *See* Enriquez Decl. at ¶¶ 12–13. Critically, the Fiscal Year 2020 funds expired on September 30, 2024, and are no longer available for new obligations. *See*

---

[5] During the hearing on the motion for emergency relief, the parties confirmed that the only remaining funds from Fiscal Year 2021 are those under Subsection (a)(1), which the court enjoined in the GLO litigation.

4

*id.* at ¶ 14.  The Fiscal Year 2021 funds will likewise expire on September 30, 2025.  *See id.* at ¶¶ 15, 18.  Defendants, accordingly, intend to obligate the remaining Fiscal Year 2021 funds before they lapse.  *Id.* at ¶¶ 16–17, 19–20.

### C. Notice of Breach and Requested Relief

Plaintiffs first provided Defendants with a notice of breach under the Settlement Agreement in April 2024, after the GLO court issued the preliminary injunction and Defendants stopped remediation work.  *See* Dkt. No. 376-1, Ex. A at 6–7.  Plaintiffs contend that despite the injunction, Defendants have breached the Settlement Agreement by stopping work on several of their outstanding obligations under the agreement.  *See id.*; *see also* Dkt. No. 376 at 10–11.

Plaintiffs argue that under the Settlement Agreement, Defendants agreed that some—though not all—mitigation and remediation projects would be funded "exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations."  *See* Dkt. No. 376 at 4; *see also* Dkt. No. 387 (listing outstanding obligations under Settlement Agreement that do and do not require funding from Fiscal Year 2020 or 2021 appropriations).  But Plaintiffs state that Defendants have not shown that funding is in fact unavailable.  *See* Dkt. No. 376 at 10–11.  Plaintiffs further argue that Defendants agreed at the time they entered into the Settlement Agreement "that such funding [was] currently available and that they [would] take all reasonable steps to ensure that such funds remain available to comply with this Agreement."  *See* SA at ¶ 57.  And Plaintiffs urge that Defendants have failed to take all reasonable steps to ensure funding remains available in the GLO litigation.  *See* Dkt. No. 376 at 11.  Specifically, Plaintiffs appear to take issue with Defendants' decision not to appeal the preliminary injunction and their opposition to Plaintiffs' motion to intervene.  *See id.*  Lastly, Plaintiffs briefly suggest that Defendants have breached the Settlement Agreement in ways unrelated to the injunction in the GLO litigation, such as the construction of border wall in areas prohibited by the Settlement Agreement.  *See id.* at 12.

Although not framed as a motion for a preliminary injunction, that is in effect what Plaintiffs are seeking in their pending motion for emergency relief:  temporary relief before the Court determines whether Defendants have in fact breached the Settlement Agreement and orders

5

enforcement.[6] In their emergency motion Plaintiffs request an order: (1) requiring an accounting of the funds that are currently available to fulfill the remaining obligations under the Settlement Agreement; (2) preserving at least $50 million in funds beyond September 30, 2025, while enforcement litigation proceeds; (3) requiring Defendants to give at least seven business days' notice before undertaking any new obligations that would reduce available funds below $50 million; and (4) referring the cases back to a magistrate judge for further settlement discussions. *See id.* at 3, 9. Given the dynamic nature of this case, circumstances have already changed in the short time since Plaintiffs initially filed their motion. Notably, during the hearing, Defendants confirmed that of the Fiscal Year 2021 funding, only $10.7 million remained unobligated as of September 18. *See* Dkt. No. 386. Plaintiffs' request to preserve $50 million of this funding is thus already infeasible. *See* Dkt. No. 376 at 10 (recognizing that "[w]hile the Court may preserve funds against expiration, it cannot do so if the relevant funds are obligated"). In any event, the Court considers whether some lesser form of emergency relief is appropriate under the circumstances where the remaining unobligated Fiscal Year 2021 funds will lapse imminently.

## II.  LEGAL STANDARD

A plaintiff seeking preliminary relief must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the

---

[6] Construing the request as a motion for preliminary injunction is also consistent with the parties' Settlement Agreement, which states that "if Plaintiffs believe irreparable injury may occur absent immediate action ('in Emergency Circumstances') and if Defendants decline to preserve the status quo upon notice, Plaintiffs may immediately initiate proceedings before the court to preserve the status quo, provided the parties meet and confer before initiating any such proceedings." *See* SA at ¶ 73(b); Dkt. No. 385 at 3, 5 (relying on ¶ 79(b) as basis for emergency relief).

6

1  [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the
2  public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).
3    Where a plaintiff seeks mandatory injunctive relief instead of prohibitory injunctive relief
4  to maintain the status quo, a plaintiff's burden is "doubly demanding." *Garcia v. Google, Inc.*,
5  786 F.3d 733, 740 (9th Cir. 2015). Such a plaintiff "must establish that the law and facts clearly
6  favor her position, not simply that she is likely to succeed." *Id.* And the Ninth Circuit often
7  cautions that a mandatory injunction "goes well beyond simply maintaining the status quo
8  pendente lite [and] is particularly disfavored." *Id.* (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d
9  1313, 1320 (9th Cir. 1994)). District courts therefore should deny such requests "unless the facts
10 and law clearly favor the moving party." *Stanley*, 13 F.3d at 1320 (quotation omitted). Put
11 differently, mandatory injunctive relief should never issue in "doubtful cases." *Garcia*, 786 F.3d
12 at 740 (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160
13 (9th Cir. 2011)).

### III. DISCUSSION

  The Court understands that the parties have been engaging in ongoing negotiations since the preliminary injunction in the GLO litigation was issued in 2024. Still, as discussed during the hearing on this motion, the Court finds it unreasonable that the parties waited so long to bring the injunction and the alleged breaches to this Court's attention. The "emergency" nature of Plaintiffs' motion could and should have been avoided entirely.

#### A. Type of Injunction

  As noted above, a preliminary injunction "can take two forms," either a "prohibitory injunction" or a "mandatory injunction." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). "Prohibitory injunction[s]" simply "preserve the status quo pending a determination of the action on the merits," while "mandatory injunction[s]" "order[] a responsible party to take action." *Id.* (quotation omitted). "The relevant status quo is that between the parties pending a resolution of a case on the merits." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (quotation omitted); *see also Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) ("The status quo is the last uncontested status

which preceded the pending controversy." (quotation omitted)).  As noted above, this distinction is significant because mandatory injunctions are "particularly disfavored," and a plaintiff's burden is "doubly demanding" when seeking one.  *Garcia*, 786 F.3d at 740.

Because the parties do not frame the requested relief as a preliminary injunction, they do not address this issue.  The Ninth Circuit also has recognized that the difference between mandatory and prohibitory injunctions is a "somewhat artificial legal construct," and that there can be ambiguities.  *See Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017).  On the one hand, Plaintiffs' requested relief could be characterized as a prohibitory injunction:  preventing the expiration and obligation of any remaining Fiscal Year 2021 Funds.  On the other hand, to the extent Plaintiffs are asking that Defendants change their policies and protocols for obligating the remaining Fiscal Year 2021 funds, this would change the status quo such that it could be considered a mandatory injunction.  Given the far from overwhelming evidence supporting Plaintiffs' claimed breaches, at least on the preliminary record before the Court, the line between mandatory versus prohibitory injunctions does not seem dispositive here.  For purposes of this order, therefore, the Court considers this a request for prohibitory injunction.

## B.     *Winter* Factors

### i.     **Likelihood of Success on the Merits**

Under the "sliding scale" approach for a preliminary injunction, "a stronger showing of one element may offset a weaker showing of another."  *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citing *Cottrell*, 632 F.3d at 1131).  "[A]t an irreducible minimum, though, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation."  *Id.* (quotation omitted).  They have not done so here.

Plaintiffs' request for emergency relief is primarily based on their contention that Defendants have breached the Settlement Agreement by stopping work on Phase 2 and Phase 3 mitigation and remediation projects.  *See* Dkt. No. 376 at 10–12.  On the current record, however, Plaintiffs have not shown a likelihood or even a fair chance of success on the merits.  The Settlement Agreement specifically states that "Defendants' responsibility under this agreement is contingent upon the availability of appropriated funds."  *See* SA at ¶ 57.  And in various other

1    provisions in the Settlement Agreement the government's ability to complete specific remediation

2    and mitigation projects is conditioned on the availability of funds.  *See id.* at ¶¶ 16, 28, 48, 49, 53.

3    But to the extent Plaintiffs contend that Defendants are failing to spend Fiscal Year 2021 funds on

4    remediation and mitigation, the GLO injunction, which remains in place, specifically prohibits the

5    use of those funds for those purposes.  Those funds therefore are not currently available.

6    Defendants accordingly argue that the GLO order excuses their performance under the Settlement

7    Agreement.  *See* Dkt. No. 382 at 15 (citing *Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319,

8    328 (5th Cir. 2001)).  Plaintiffs do not directly respond to this argument or explain why a court

9    order cannot render the funds unavailable for purposes of the Settlement Agreement.

10       Instead Plaintiffs argue that it was unreasonable—and thus a breach—for Defendants to

11   capitulate to the GLO injunction and decline to appeal the order.  *See* Dkt. No. 376 at 11.  But they

12   have offered little support for such an interpretation.  Defendants did initially oppose the motion

13   for preliminary injunction in the GLO litigation, but were unsuccessful.  And their opposition to

14   Plaintiffs' request to intervene does not appear to have been a tactic to sidestep the Settlement

15   Agreement.  Rather, Defendants' opposition was based on the timing of the motion and the

16   availability of this Court to resolve any outstanding issues regarding the Settlement Agreement.

17   *See GLO*, Dkt. No. 184.  Plaintiffs no doubt disagree with Defendants' approach in the GLO

18   litigation, but that does not on its own, make Defendants' conduct unreasonable.  The Court

19   cannot find that Plaintiffs are likely to succeed in showing a breach of the Settlement Agreement,

20   or even serious questions going to the merits, based on what has been presented.

21       Plaintiffs have also suggested that Defendants breached the Settlement Agreement in other

22   ways, such as by building in areas prohibited by the Settlement Agreement and by failing to

23   identify alternative funding for their outstanding obligations.  *See* Dkt. No. 376 at 10–11; Dkt. No.

24   385 at 10–11.  However, even assuming that such conduct occurred and would constitute a breach

25   under the Settlement Agreement, Plaintiffs do not explain how the specific and time-sensitive

26   relief that they are seeking here is warranted.  The unavailability of Fiscal Year 2021 funds would

27   not necessarily preclude the Court from ordering performance under the Settlement Agreement if

28   Plaintiffs were ultimately able to establish those other breaches.

1          The Court acknowledges the difficulty of the current circumstances in which both sides are operating under time constraints. And if this enforcement effort proceeds, it will present a number of complex statutory and practical challenges. But Plaintiffs have not met their burden of establishing that their requested relief is warranted to protect the status quo.

## IV.    CONCLUSION

The motions are **DENIED**. To the extent the motions contained both a request to enforce the Settlement Agreement and a request for emergency relief, the motion to enforce the Settlement Agreement is denied without prejudice. The government filed a declaration on September 25, 2025, contending that new DHS appropriations are not available to fund any outstanding obligations under the settlement agreement.[7] *See* Dkt. No. 389; Dkt. No. 398-1. The Court expects the parties to proceed in good faith in an effort to resolve outstanding issues under the Settlement Agreement wherever possible.

The Court therefore **SETS** a further case management conference on October 21, 2025, at 2:00 p.m. to discuss how, if at all, these matters should proceed. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The Court further **DIRECTS** the parties to submit a joint case management statement by October 14, 2025.

**IT IS SO ORDERED.**

Dated: September 26, 2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[7] Defendants' latest declaration exceeded the scope of what the Court requested, addressing not only the availability of new funding but also the government's view of the scope of its obligations. The declaration was not intended as an opportunity for the government to expand on its opposition to the motion. Accordingly, for purposes of this order, the Court does not consider the legal arguments that Defendants raised in the declaration regarding the interpretation of the Settlement Agreement or any alleged breach. Moreover, the Court does not treat the Defendants' position as dispositive of any questions related to Plaintiffs' claim of breach, the substance of which remains to be decided.